IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN MCCORVEY, et al.,

    Plaintiffs,

      v.

CHARLES PETERSEN, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-2083-TWT

## OPINION AND ORDER

This is an action for fraud and breach of fiduciary duty. It is before the Court on Defendant Charles Petersen's Motion to Dismiss [Doc. 9] and the Soho Defendants'[1] Motion to Dismiss [Doc.12].[2] As explained below, Defendant Charles Petersen's Motion to Dismiss [Doc. 9] is GRANTED and the Soho Defendants' Motion to Dismiss [Doc. 12] is GRANTED.

## I.    Background[3]

This case involves vague and incomprehensible allegations that the Defendants pocketed money that was owed to the Plaintiffs. Plaintiff John

---

[1] The "Soho Defendants" are Defendant Soho Income Advisors LLC and Defendant Soho Capital Management, LLC.

[2] The Soho Defendants simply adopt all of Defendant Petersen's arguments. (Soho Defs.' Br. in Supp. of Mot. to Dismiss, at 1-2). Accordingly, throughout the body of this Opinion and Order, the Court will cite and refer to Defendant Petersen's Motion to Dismiss [Doc. 9] as "Defendants' Motion to Dismiss."

[3] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

McCorvey is the CEO of Plaintiff Hyperpath Technologies, LLC ("Hyperpath"). (Compl. ¶¶ 11). Defendant Petersen is the manager of the Soho Defendants. (*Id.* ¶ 13).

Between 2013 and 2014 Plaintiff McCorvey held his broker-dealer license at Gar Wood Securities, LLC ("Gar Wood"). (*Id.* ¶ 14). During that time, the Defendants became fund administration clients of Plaintiff McCorvey with Stonegate Global Fund Administration ("SGFA"), one of Hyperpath's subsidiaries. (*Id.* ¶¶ 12, 15). In October 2015, Gar Wood and Plaintiff McCorvey agreed to move Plaintiff McCorvey's broker-dealer licenses elsewhere because of compliance burdens. (*Id.* ¶ 16). Plaintiff McCorvey then moved his licenses to Rainmaker Securities, LLC ("Rainmaker"). (*Id.* ¶ 17). Compliance issues arose with Rainmaker as well, so Rainmaker asked Plaintiff McCorvey to move his licenses to another broker-dealer. (*Id.* ¶ 18). Plaintiff McCorvey subsequently began looking into creating a broker-dealer business and/or acquiring an existing one. (*Id.* ¶ 19).

On or about November 2017, the Plaintiffs made an agreement with Defendant Petersen that he take the steps needed to create or acquire—and then run—a new broker-dealer business in exchange for a 5-10% equity stake in the new business. (*Id.* ¶ 20). After Defendant Petersen met with several broker-dealer compliance vendors, the Plaintiffs and Defendant Petersen entered into an agreement with Bridge Capital Associates, Inc. ("Bridge") that

established that Bridge would assist the efforts to establish a broker-dealer as a subsidiary of Plaintiff Hyperpath. (*Id.* ¶¶ 21-22). They also agreed that Bridge would hold Defendant Petersen's licenses in the interim and that Plaintiffs would pay the costs associated with doing so. (*Id.* ¶ 23). Payments owed to Plaintiff McCorvey for his work at Gar Wood and Rainmaker were paid to Defendant Petersen through Bridge, so Plaintiffs and Defendant Petersen agreed that SGFA would invoice the Soho Defendants for the monthly commissions. (*Id.* ¶ 27).

On March 20, 2018, Defendant Petersen informed Plaintiff McCorvey and Bridge that he acquired his FINRA Series 63 license, which meant Bridge could move forward with the Gar Wood commission sharing agreement ("CSA"). (*Id.* ¶ 30). Under the CSA, commissions owed to Plaintiff McCorvey would be passed on to be paid out by Bridge. (*Id.*). The CSA was executed on April 16, 2018, and was effective as of March 19, 2018. (*Id.* ¶ 31).

"Between April 2018 and October 2022, Defendant Petersen knowingly lied about and personally took all the money from the CSA revenue streams without authority." (*Id.* ¶ 38). On or about December 2018, Defendant Petersen informed the Plaintiffs that Bridge was only receiving a negligible amount of CSA commissions. (*Id.* ¶ 61). He continued to assure Plaintiff McCorvey "every couple of months or so" that the commissions remained nominal. (*Id.* ¶ 64). Defendant Petersen, Gar Wood, and Bridge were the only ones with access to

3

the commission reconciliation reports. (*Id.* ¶ 63). Because the Plaintiffs did not hold FINRA licenses with Gar Wood or Bridge, they had no way to access the commission reconciliation reports or verify how much Defendant Petersen received. (*Id.* ¶¶ 62-63). In March 2021, Defendant Petersen began sending "Hyperpath/Stonegate" monthly reconciliations from the CSA. (*Id.* ¶ 37).

On or around April 1, 2021, Bridge informed Plaintiff McCorvey that it was going to terminate Defendant Petersen's FINRA registration. (*Id.* ¶ 41). Then on April 5, 2021, Plaintiff McCorvey and Defendant Petersen had a phone call in which Defendant Petersen stated that the fees being collected were nominal and barely enough to cover Bridge's fees. (*Id.* ¶ 42). Defendant Petersen also suggested that Plaintiff McCorvey had told him that he could keep the money paid to him from the CSA and admitted that he had personally taken the money from Plaintiff McCorvey's revenue streams instead of holding those funds for the future broker-dealer. (*Id.* ¶¶ 43, 46). Plaintiff McCorvey requested to review all previous reconciliation reports from Bridge, but Defendant Petersen refused to do so, stating that he could not find them. (*Id.* ¶¶ 47-48).

On or around April 9, 2021, Bridge reinstated Defendant Petersen. (*Id.* ¶ 49). "In December 2021, Hyperpath/Stonegate acquired Steward Securities Group, LLC ("Steward") to use as its own broker-dealer." (*Id.* ¶ 53). "Hyperpath/Stonegate and Steward" then applied for and received FINRA

approval of a Continuing Membership Application. (*Id.* ¶¶ 54-55). The CSA was then novated and assigned to Steward, and Steward began receiving the reconciliation reports which showed that the income levels were materially higher than Defendant Petersen had indicated. (*Id.* ¶¶ 56-57). Based on these events, the Plaintiffs filed suit against the Defendants, and now the Defendants move to dismiss the Complaint in its entirety.

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753

F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III.    Discussion

The Defendants assert several arguments for dismissing the Complaint.

## A. Standing

The first issue that the Defendants raise is that the Plaintiffs have no basis for recovery because separate subsidiary entities allegedly made and were supposed to receive the payments at issue. (Defs.' Br. in Supp. of Mot. to Dismiss, at 7-8). The Plaintiffs fail to respond to this argument. Having reviewed the Complaint, the Court agrees with the Defendants with respect to Hyperpath. The Complaint does not allege that Hyperpath ever provided, received, or was supposed to receive anything. Rather, it was Hyperpath's subsidiary SGFA that dealt with the Defendants. (Compl. ¶¶ 15, 27, 29). There are several allegations that use the term "Hyperpath/Stonegate." (*Id.* ¶¶ 37, 45, 53-55). Those allegations are unclear as to whether they mean "Hyperpath and Stonegate" or "Hyperpath or Stonegate." The exhibits attached to several of those allegations fail to show any involvement of Hyperpath. Instead, they each involve either SGFA, Stonegate Global Capital Partners, Stonegate Global Financial Group, LLC, or Steward. (*Id.* Exs. 10, 13, 14).

6

It seems the only basis from which Plaintiff Hyperpath is asserting claims is because those entities were its subsidiaries. Other courts have held that a parent company does not have standing to bring claims on behalf of its subsidiary, reasoning that "[t]his conclusion follows from the principle that a parent corporation cannot create a subsidiary and then ignore its separate corporate existence whenever it would be advantageous to the parent." *EMI Ent. World, Inc. v. Karen Recs., Inc.*, 2013 WL 2480212, at \*3 (S.D.N.Y. June 10, 2013) (quotation marks and citations omitted). This reasoning strikes the Court as sound. Because of that and because the Plaintiffs have not bothered to respond to the Defendants' arguments, the Court will follow this rule here. *See Brown v. J.P. Turner & Co.*, 2011 WL 1882522, at \*5 (N.D. Ga. May 17, 2011) ("Plaintiffs' failure to respond is in itself grounds for the Court to rule in favor of defendant." (citations omitted)). The Court finds that Hyperpath lacks standing to assert its claims and will dismiss them all.

The Defendants also argue that the claims asserted by Plaintiff McCorvey should be dismissed because "the allegations in the Complaint and the documents attached to the Complaint show that McCorvey did not pay any money and was not due to personally receive any funds." (Defs.' Br. in Supp. of Mot. to Dismiss, at 8). However, the Complaint alleges that a CSA "by which commissions owed to Mr. McCorvey for his work there would be passed on to be paid out by Bridge" was executed and that "Defendant Petersen knowingly

lied about and personally took all the money from the CSA revenue streams without authority." (Compl. ¶¶ 30-31, 38). Given that he was directly involved, whether or not McCorvey is "due to personally receive any funds" is more of a failure-to-state-a-claim question than a standing question. (Defs.' Br. in Supp. of Mot. to Dismiss, at 8). The Court will address whether McCorvey plausibly stated any of his claims below.

### B. Fraud

The Plaintiffs assert a claim titled "Fraud in the Factum"[4] against Defendant Petersen. The Defendants argue that the Plaintiffs have not pled their fraud claim with sufficient particularity. (Defs.' Br. in Supp. of Mot. to Dismiss, at 15-17). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "[U]nder Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by

---

[4] As the Defendants point out, fraud in the factum is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Bellamy v. Resol. Tr. Corp.*, 266 Ga. 630, 631 (1996) (quotation omitted). Since that is clearly not the situation alleged here, the Court will follow the Defendants in assuming that the Plaintiffs are really asserting a fraudulent misrepresentation claim.

the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (citation omitted).

Plaintiffs argue, relying on *United States v. Zak*, 426 F. Supp. 3d 1365, 1371 (N.D. Ga. 2019), that they "are not required to plead the exact dates or parties to each and every transaction" and are only required to "allege facts that demonstrate the main recurring aspects and elements of the scheme" (Pls.' Br. in Opp'n to Mot. to Dismiss, at 11, 13).

*Zak*, 426 F. Supp. 3d at 1370-71, was a conservation easement case in which the government alleged over ninety instances of fraud. "The Government provide[d] three prototypical exemplars to describe the major aspects of the scheme, with some variations to reflect the adaptation of the scheme over time and place." *Id.* at 1371. The "detailed factual averments" of the three examples were sufficient to satisfy Rule 9(b) even though the complaint did not "identify with strict particularity the exact dates or parties to each and every transaction" because the allegations "tend[ed] to demonstrate the main recurring aspects and elements of the scheme, sufficiently apprising defendants of the behavior in which they allegedly participated that is challenged by the Government." *Id.*

Here, the Plaintiffs allege only one count of fraud and do not provide "detailed factual averments" supporting it. *Id.* The Court sees no reason to apply *Zak* to the present case. And even if the allegations did sufficiently

9

identify the fraudulent statements, the Court would still dismiss this claim because the Plaintiff entirely failed to respond to the Defendants' argument that the Plaintiffs did not plausibly allege justifiable reliance. *See Brown*, 2011 WL 1882522, at *5 ("Plaintiffs' failure to respond is in itself grounds for the Court to rule in favor of defendant." (citations omitted)). The Court will dismiss the Plaintiffs' fraud claim (Count III).

### C. Breach of Fiduciary Duty

The Plaintiffs assert a breach of fiduciary duty claim against Defendant Petersen. (Compl. ¶¶ 79-87). They contend that Defendant Petersen breached a fiduciary duty owed to them "by failing to inform Plaintiffs of how much money he received from Bridge under the Gar Wood CSA," "by intentionally concealing how much money he received from Bridge under the Gar Wood CSA from Plaintiffs," and "by intentionally keeping for his own benefit the money he received from Bridge under the Gar Wood CSA." (*Id.* ¶¶ 81-83). The Defendants argue that this claim should be dismissed because they fail to meet the requirements of Rule 9(b). (Defs.' Br. in Supp. of Mot. to Dismiss, at 19-20).

"[C]ourts have consistently found that Rule 9(b) is also applicable to torts that are not even necessarily fraudulent – such as a breach of fiduciary duty – as long as their underlying factual allegations include averments of fraud." *Cutler v. Voya Fin., Inc.*, 2018 WL 4410202, at *6 (S.D. Fla. Aug. 23, 2018) (citations omitted). The Plaintiffs provide no argument as to why Rule

9(b) should not apply to this claim. Instead, they argue that they have satisfied the Rule 9(b) requirements for the same reasons they argued that their fraud claim did so. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 14). The Court rejects that argument for the reasons stated above. That alone is sufficient to dismiss this claim.

Moreover, the Court agrees with the Defendants that the Plaintiffs fail to allege that Defendant Petersen owed the Plaintiffs a fiduciary duty. (Defs.' Br. in Supp. of Mot. to Dismiss, at 20). The Complaint merely states that "Defendant Petersen owed Mr. McCorvey and Hyperpath a fiduciary duty as an agent, coventurer, fiduciary, and under FINRA." (Compl. ¶ 80). That alone is insufficient. *See Wilchombe v. Teevee Toons, Inc.*, 2006 WL 1553939, at *2 (N.D. Ga. June 2, 2006) ("Conclusory allegations that defendants breached fiduciary duties without any supporting factual assertions will not suffice to prevent dismissal." (citation omitted)).

In their Response, the Plaintiffs state, "[a]s a holder of various licenses with the broker dealer business pursuant to the agreement with Plaintiffs, Defendant Petersen held fiduciary duties as agent, coventurer, fiduciary, and under FINRA." (Pls.' Br. in Opp'n to Mot. to Dismiss, at 14). However, they provide no citations to the Complaint where they allege that Defendant Petersen was "a holder of various licenses with the broker dealer business," nor do they provide any legal authority stating that that creates a fiduciary

11

duty. For these reasons, the Court will dismiss Count II of the Complaint.

### D. Statute of Limitations

The Defendants argue that the claims of breach of contract, promissory estoppel, conversion, and unjust enrichment should all be dismissed as barred by the statute of limitations. (Defs.' Br. in Supp. of Mot. to Dismiss, at 9-15). Each of those claims has a four-year statute of limitations. *See Palmer v. Neal*, 602 F. Supp. 882, 886 (N.D. Ga. 1984) (stating that O.C.G.A. § 9-3-25 "provides a four year statute of limitation on actions for breach of an oral contract."); *Thierry v. Honey Pot Co. (DE), LLC*, 2024 WL 3983400, at *5 (11th Cir. Aug. 29, 2024) (per curiam) ("A four-year statute of limitations applies to claims for fraud in the inducement, unjust enrichment, *quantum meruit*, and promissory estoppel." (citations omitted)); O.C.G.A. § 9-3-32 ("Actions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues."). Furthermore, for each of those claims, the statute of limitations begins to run at the first breach or conversion. *See Thierry*, 2024 WL 3983400, at *5 ("When the claim is for breach of contract, Georgia law provides that the statute of limitations runs from the time the contract is broken and not from the time the actual damage results or is ascertained." (quotation marks and citations omitted)); *Id.* at *6 ("[T]he accrual date for these equitable claims[, including unjust enrichment and promissory estoppel,] was the same as the accrual date

for the breach of contract claim."); *HealthPrime, Inc. v. Smith/Packett/Med-Com, LLC*, 428 F. App'x 937, 942 (11th Cir. 2011) (noting that "as a general rule, a right of action for wrongful conversion accrues on the date of the conversion" and further explaining that "[m]ere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitations, for a plaintiff must exercise reasonable diligence to learn of the existence of a cause of action." (citations omitted)).

The alleged wrongdoing began occurring in April 2018. (Compl ¶ 38). The Complaint was not filed until May 13, 2024, and the Defendants were not served until November 6, 2024. (*Id.*, at p. 32; Affirmation of Service to Def. Peterson, Doc. 6; Affirmation of Service to Def. Soho Capital Management, LLC, Doc. 7; Affirmation of Service to Def. Soho Income Advisors LLC, Doc. 8). Since more than four years have passed, the Defendants contend that these claims are barred. (Defs.' Br. in Supp. of Mot. to Dismiss, at 9-15).

The Plaintiffs do not contest that the statute of limitations for these claims is four year or that the wrongdoing started in April 2018. Rather, they argue that the statute of limitations was tolled because of the Defendants' fraud. (Defs.' Br. in Opp'n to Mot. to Dismiss, at 4-7). "Actual fraud which tolls the statute arises in two entirely different circumstances." *Shipman v. Horizon Corp.*, 245 Ga. 808, 808 (1980). "The first circumstance is where the actual fraud is the gravamen of the action. In such cases the statute of limitations is

13

tolled until the fraud is discovered or by reasonable diligence should have been discovered." *Id.* "The second circumstance is where the gravamen of the action is other than actual fraud, such as constructive fraud, negligence, breach of contract, etc. In such cases there must be a separate independent actual fraud involving moral turpitude which debars and deters the plaintiff from bringing his action." *Id.* at 809.

"[B]ecause tolling the statute of limitations requires proof of fraud, the allegations must be pleaded with particularity." *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2018 WL 3497153, at *5 (N.D. Ga. July 20, 2018) (citation omitted). The Court has already dismissed the Plaintiffs' fraud claim for failure to plead the alleged fraud with particularity. The Complaint does not allege any other independent acts of fraud which could toll the statute of limitations. The Court therefore finds that the statute of limitations was not tolled and that Counts I, IV, V, VI are time-barred. The Court will dismiss them accordingly.

### E. Rescission and Restitution

The Plaintiffs fail to identify what agreement for which they are seeking rescission and restitution. Instead, the Complaint states, "Plaintiffs hereby demand recission [sic] of any agreement that has ever existed between the parties." (Compl. ¶ 72). In their Response, the Plaintiffs assert "Plaintiffs can identify various agreements in its Complaint to allege recission and

14

restitution." (Pls.' Br. in Opp'n to Mot. to Dismiss, at 15). Yet—even after the Defendants' prompting—they do not identify the one(s) for which they are seeking rescission and restitution. That is fatal to this claim. Without knowing what contract is the subject of this claim, the Court and the Defendants do not have a meaningful opportunity to analyze the plausibility of this claim. Such a pleading is unfair to the Defendants and permitting it to proceed would encourage future plaintiffs to assert amorphous claims as a means of getting to discovery. The Court will dismiss Count VII.

### F. Attorney's Fees

The Plaintiffs seek attorney's fees under O.C.G.A. § 13-6-11. (Compl. ¶¶ 124-26). "[A] claim for an attorney's fees under . . . O.C.G.A. Section 13-6-11, requires an underlying claim." *Gilmour v. Am. Nat'l. Red Cross*, 385 F.3d 1318, 1324 (11th Cir. 2004) (per curiam). Since all of the Plaintiffs' underlying claims fail, the Court will dismiss their claim for attorney's fees as well.

### IV.    Conclusion

For the foregoing reasons, Defendant Charles Petersen's Motion to Dismiss [Doc. 9] is GRANTED and the Soho Defendants' Motion to Dismiss [Doc. 12] is GRANTED.

SO ORDERED, this ___28th___ day of April, 2025.

THOMAS W. THRASH, JR.
United States District Judge

15